JOSEPH H. HARRINGTON
United States Attorney
Eastern District of Washington
Scott T. Jones
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 16 2018

SEAN F. McAVOY, CLERK
_____ DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

         Plaintiff,

vs.

CARLOS QUINTO FRAGOSO,

         Defendant.

1:17-CR-2016-SMJ

Plea Agreement
[Fed. R. Crim. P. 11(c)(1)(C)]

    Plaintiff, the United States of America, by and through Joseph H. Harrington, United States Attorney for the Eastern District of Washington, and Scott T. Jones, Assistant United States Attorney for the Eastern District of Washington, and Defendant CARLOS QUINTO FRAGOSO, and the Defendant's counsel, Greg Scott, agree to the following Plea Agreement:

    1.    <u>Guilty Plea and Maximum Statutory Penalties</u>:

    The Defendant, CARLOS QUINTO FRAGOSO, agrees to waive indictment and plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) to the Superseding Information, charging him with Conspiracy to Commit Child Sex Trafficking, in violation of 18 U.S.C. § 1594(c). The Defendant understands that Conspiracy to Commit Child Sex Trafficking, in violation of 18 U.S.C. § 1594(c), is a Class A felony charge that carries a maximum term of custody of life; a fine of up to

Plea Agreement-1

$250,000; a period of supervised release of at least five years, up to life; denial of certain federal benefits; a $100 special penalty assessment; and mandatory registration as a sex offender. The Defendant also understands that pursuant to the Justice for Victims of Trafficking Act of 2015, unless the Court finds him to be indigent, it must impose an additional mandatory special assessment of $5,000.

The Defendant further understands that a violation of the conditions of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release, pursuant to 18 U.S.C. § 3583(e)(3), without credit for time previously served on post-release supervision.

2. <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. The Defendant understands that sentencing is a matter solely within the discretion of the Court; that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate consistent with the Rule 11(c)(1)(C) nature of this Plea Agreement.

Although the Defendant and the United States agree to recommend that, pursuant to Fed. R. Crim. 11(c)(1)(C), the Court impose a term of imprisonment of no fewer than 84 and no more than 156 months, to be followed by a term of supervised release of twelve years, the Defendant acknowledges that no promises of any type have been made to him with respect to the sentence the Court will ultimately impose. The Defendant understands that the Court is required to consider the applicable Guidelines sentencing range, but may vary upward or downward from that sentencing range.

The Defendant acknowledges that this Plea Agreement is entered pursuant to Fed. R. Crim. 11(c)(1)(C). The Defendant understands that he has the option to withdraw from this Plea Agreement if the Court imposes a term of imprisonment of

Plea Agreement-2

more than 156 months or a term of supervised release of more than twelve years. The Defendant also understands that the United States has the option to withdraw from this Plea Agreement if the Court imposes a term of imprisonment of fewer than 84 months or a term of supervised release of less than twelve years.

The Defendant and the United States acknowledge that the imposition of any fine, restitution, or conditions of supervised release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that parties are free to make any recommendation they deem appropriate as to the imposition of a fine, restitution, or condition(s) of supervised release; and that the Court will exercise its discretion in this regard.

3.     Waiver of Constitutional Rights:

The Defendant understands that by entering this plea of guilty, the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a).   The right to a jury trial;
(b).   The right to see, hear, and question the witnesses;
(c).   The right to remain silent at trial;
(d).   The right to testify at trial; and
(e).   The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.     Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Commit Child Sex Trafficking, in violation of 18 U.S.C.

Plea Agreement-3

§ 1594(c), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, between on or about April 8, 2016, and June 21, 2016, within the Eastern District of Washington, the Defendant conspired with one or more other persons to knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit a person the defendant knew was less than eighteen years old;
>
> *Second*, the Defendant knew that the person would be caused to engage in a commercial sex act; and
>
> *Third*, the recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting was done in or affecting interstate commerce.

5. <u>Factual Basis and Statements of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and that these facts constitute an adequate factual basis for CARLOS QUINTO FRAGOSO's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

In May 2016, the Yakima Police Department received a report that 16-year-old L.R. was engaging in prostitution. L.R.'s custodial aunt told the investigating officer that she reviewed L.R's Facebook account and found private messages with apparently adult men arranging sex acts for money. She also reported seeing private messages with other girls L.R.'s age about those girls engaging in sex acts for money. The aunt took photos of the messages, which she turned over to the police.

Plea Agreement-4

Detective Mike Durbin reviewed the messages, and found several conversations with a Facebook user named "Carlos Fragoso." Those conversations are detailed below.

April 11, 2016:
Fragoso: "Lmao how old is she"
L.R.: "17"
Fragoso: "Lol she young"
L.R.: "With good pussu"
Fragoso: "Yeah but too tight so it hurts a bit"
L.R.: "Never".

April 17, 2016:
Fragoso: "Ok well I got the 20 for bj"
L.R.: "Ok then when do u wanna do it"
Fragoso: "Right now cause I work tomorrow"
L.R.: "Okay then"

April 19, 2016:
Fragoso: "Still want the $20? You're acting up"
L.R.: "$30"
Fragoso: "$25?"
L.R.: "$30 for everything"
Fragoso: "But where cause my car is uncomfortable"
L.R.: "I'll ride u instead of u doing the work u loved that last time".

April 30, 2016:
Fragoso: "Wow your home girl slacked on me"
L.R.: "how"
Fragoso: "Cause we only did it once and now she wants to go with you or a friend"
L.R.: "Tell her b straight"
…
Fragoso: "Is Cheyenne ready?"
L.R.: "She will b soon…608 Pickens rd…30 mins nikka imma get rdy rn"
…
Fragoso: "You know I would never hurt or make her feel bad"
L.R.: "If imma convince her I want $60"
Fragoso: "Fucking pimp you!!!! Haha"
L.R.: "Ayeee I gotta make mines to cx Gaha It will be good tho"

Plea Agreement-5

> Fragoso: "I know so she's mine for the night? $60 and $80…Well I'm down but u have to talk that out with her and let her know it's as many times and not once or twice. I don't want her to be all stuck up or mean"
> L.R.: "Lol she said $80 yeah and she doesn't Care, she'll suck ur dick all night as Long as she's getting played"
> Fragoso: "Ok then it's on…Anytime tomorrow really but it's bj and sex for that much and if she slacks then it's never on again"
> L.R.: "Okay"
> …
> L.R.: (sends Fragos a picture of C.O., then 17 years old)
> Fragoso: "She's down?"
> L.R.: "Yeee tomorrow What time but she wants $60"

Detective Durbin also found text messages from May 12 and 13, 2016 between L.R. and C.O. discussing "dates" with Fragoso and an individual named "Iggy." He identified and interviewed C.O. She told him that L.R. was her pimp and that L.R. introduced her to Fragoso, who she knew as "Carlos." She said that, in exchange for money, she went to the "Maui Wowi" hotel near the train tracks in Yakima and had sex with Fragoso.[1] She described Fragoso as uncircumsized and said that she told Fragoso her true age. She later said that she had multiple "dates" with Fragoso and that she had made approximately $400 from having sex with him.

Durbin asked C.O. to send Fragoso a Facebook message saying that she had a 16-year-old friend named "Lexi" who was willing to have sex for money. C.O. then sent the following message to Fragoso: "Hey I was in yaks last weeknd to get some stuff and was hanging out with my girl Lexi she's 16 if you need a new girl sence I moved she says your cute and to txt her [undercover YPD cell number]…I told her you'd txt her she's trying to make some cash."

Fragoso responded less than an hour later. He and Durbin then engaged in the following text message conversation:

> Fragoso: "Are you Cheyenne friend?"

---

[1] C.O. later identified the Bali Hai hotel as the hotel in which she had sex with Fragoso.

Plea Agreement-6

>Durbin/Lexi: "Yea, who is this?...(sends picture of youthful-looking adult YPD volunteer)"
>
>...
>
>Fragoso: "youre cute...(sends pictures of himself)"
>Durbin/Lexi: "so what's goin down?"
>Fragoso: "Hopefully us doing business lol"
>
>...
>
>Durbin/Lexi: "I'm bout that cash!! $$$"
>Fragoso: "Exactly no doubt so tell me how much and where...Anything u feel like doing"
>Durbin/Lexi:. "Tell me what you need and I will tell you what it will cost. I ain't cheep!!!"
>Fragoso: "Dont be expensive either i aint rich lol how much bj"
>(discussion of whether he could pick her up)
>Durbin/Lexi: "$50?"
>Fragoso: "That's for sex...$30?"
>Durbin/Lexi: "In your car?"
>Fragoso: "Yeah unless you got a place"
>Durbin/Lexi: "I'm only 16, no crib. Your car is good! When??"

They agreed to meet twenty minutes later in a park in Yakima. Fragoso told Durbin/Lexi that he would be in a red Mustang. He was arrested after arriving at the park in the red Mustang. YPD seized his cellphone, $55, and a .22 revolver that Fragoso told them was in the center console and for which he had a concealed carry permit. Dialing the number Durbin had sent text message to made Fragoso's phone ring.

Durbin then wrote a state search warrant for Fragoso's Facebook account. When he reviewed the return, he found the conversation with L.R. described above, as well as the two conversations excerpted below:

>May 2, 2016:
>Fragoso: "When can we do business again?"
>C.O.: "I don't know...[whenever]"
>
>...
>
>Fragoso: "But I can't pay you a lot cause I spent like $200 yesterday..."
>
>...
>
>Fragoso: "You don't like bj?"
>C.O.: "Kinda"

Plea Agreement-7

> Fragoso: "How much for one?
>
> May 30, 2016:
> L.R.: (sends picture of then-14-year-old J.D.)
> Fragoso: "hella young lol…how old is she?"
> L.R.: "17"
> Fragoso: "Lol she young…I want something from [J.D.] before we go get you like a bj. I'll give her some money."
> L.R.: "She said ok…(sends screenshot of conversation between herself and J.D. in which she tells J.D., "u owe him a bj Just do it he will give you money" and J.D. responds, "Ok wht car")"

Durbin identified and interviewed J.D. She told him that, at L.R.'s direction, she once had sex with a "Carlos F" for $40. She identified Fragoso from his Facebook account and said that they had sex in his red Mustang in a cemetery.

Durbin wrote a state search warrant for J.D.'s Facebook account. In the return, he found conversations between J.D. and Fragoso discussing commercial sex acts, as well as conversations between J.D. and L.R. discussing J.D.'s "dates" with Fragoso. In one of those conversations, on April 9, 2016, Frogoso thanks J.D. for "tonight," and gives her the passcode for an iPod he gave her as payment. He then tells her that he can't wait to do "business again." Another is excerpted below:

> June 10-11, 2016:
> Frogoso: "Where u at?"
> J.D.: "My friend"
> Frogoso: "Man I've been looking for you lol"
> J.D.: "Oh lol"
> Frogoso: "Let's do business and you can't say no or idk lol"
> J.D.: "I'm in toppinish"
> Frogoso: "I told you I'd go to you silly"

Durbin then re-interviewed J.D., who told him that she had more than one "date" with Fragoso. She described three additional times Fragoso gave her money or goods (the above-described iPod, a Slurpee, and some taquitos) for sex. The third occasion – the one for which payment consisted of a Slurpee and taquitos – occurred after the April 9, 2016 Facebook conversation regarding the iPod.

Plea Agreement-8

Facebook is a facility of interstate commerce. The goods Fragoso gave J.D. in exchange for sex moved in interstate commerce. The hotel in which he engaged in commercial sex is engaged in interstate commerce.

6. <u>The United States Agrees:</u>

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Superseding Indictment and Superseding Information, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

7. <u>United States Sentencing Guideline Calculations:</u>

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing. The Defendant also understands that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a), and to impose a reasonable sentence.

(a).   <u>Base Offense Level</u>:

The United States and the Defendant agree that the base offense level for Conspiracy to Commit Child Sex Trafficking, in violation of 18 U.S.C. § 1594(c), is thirty (30). *See* U.S.S.G. §2G1.3(a)(2).

(b).   <u>Specific Offense Characteristics</u>:

The parties agree that the offense level should be raised by two (2) levels, because the offense involved the use of an interactive computer service, *see* U.S.S.G. §2G1.3(b)(3); and by an additional two (2) levels, because the offense involved the commission of a sexual act, *see* U.S.S.G. §2G1.3(b)(4).

//
//

Plea Agreement-9

(c). <u>Acceptance of Responsibility</u>

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than ~~April 25~~ May 16, 2018, the United States will move for a three (3)-level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a), (b).

The United States and the Defendant agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3)-level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt for the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(d). <u>Final Adjusted Offense Level:</u>

The United States and the Defendant agree and stipulate that if the Court accepts the parties' U.S.S.G. calculations and grants a three (3)-level adjustment for acceptance of responsibility, *see* U.S.S.G. §3ED1.1(a), (b), the final adjusted offense level would be thirty-one (31).

(e). <u>Criminal History:</u>

The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

//

Plea Agreement-10

8. <u>Incarceration and Supervised Release:</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant and the United States agree that the Defendant be sentenced to a term of custody of no fewer than 84 and no more than 156 months, to be followed by a term of supervised release of ~~twelve~~ ten years. [handwritten: 6/16/18] The parties have no agreement as to the conditions of supervised release that should be imposed. The Defendant understands that, pursuant to 18 U.S.C. § 3583(k), if he is convicted of a qualifying offense during the period of his registration as a sex offender, the Court will be required to revoke his supervised release and sentence him to at least five years.

9. <u>Criminal Fine:</u>

The United States and the Defendant are free to recommend imposition of whatever lawful fine they believe appropriate.

10. <u>Restitution:</u>

The United States and the Defendant hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 1593, 2259, 3663, 3663A and 3664, the Court should order restitution to C.O. and L.R.[2] in an amount to be determined by the Court at sentencing, due thirty days after sentencing.

11. <u>Mandatory Special Penalty:</u>

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013, and shall provide a receipt from the Clerk of the United States before sentencing as proof of this payment.

12. <u>Payments While Incarcerated:</u>

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these

---

[2] J.D. was killed in a car accident after the offense occurred.

Plea Agreement-11

obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

13. <u>Judicial Forfeiture</u>:

The Defendant, CARLOS QUINTO FRAGOSO agrees to voluntarily forfeit and relinquish all right, title and interest in all assets identified in the Information Superseding Indictment and herein, to the United States, including, but not limited to:

- one Samsung Galaxy S7 Edge cellular phone; and,
- $55.00 in U.S. currency

The Defendant stipulates that he is the sole owner of the asset(s) identified herein and that no one else has an interest in the asset(s).

The Defendant acknowledges that the assets listed above that the Defendant is agreeing to forfeit are subject to forfeiture pursuant to 18 U.S.C. § 1594, as property used or intended to be used in any manner or part to commit or to facilitate the commission of Conspiracy to Commit Child Sex Trafficking, in violation of 18 U.S.C. §§ 1591, 1594(c), as alleged in the Information Superseding Indictment, to which Defendant is pleading guilty.

The Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States, to testify truthfully in any forfeiture proceedings, and hereby agrees to execute any and all forms and pleadings necessary to effectuate the forfeiture of such assets.

The Defendant agrees to hold all law enforcement and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and forfeiture of any asset(s) covered by this plea agreement. Defendant consents to the forfeiture and disposal without further notice.

The Defendant further agrees to waive all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant

Plea Agreement-12

knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

14. <u>Appeal Rights</u>:

In return for the concessions that the United States has made in the Plea Agreement, the Defendant agrees to waive the right to appeal his conviction and any custodial sentence less than or equal to 156 months. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction be dismissed, set aside, vacated, or reversed, the Plea Agreement shall become null and void; the United States may move to reinstate all counts of Indictment; and the United States may prosecute the Defendant on all available charges involving or arising out of the Indictment. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus). However, Defendant further expressly waives his right to file any post-conviction motion attacking his convictions and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

15. <u>Notice of Sex Offender Registration</u>:

The Defendant has been advised and understands, that as a convicted sex offender, under the Sex Offender Registration and Notification Act, a federal law, the Defendant must register and keep the registration current in each of the following jurisdictions: the location of the Defendant's residence, the location of the Defendant's employment; and, if the Defendant is a student, the location of the Defendant's school. Registration will require that the Defendant provide information that includes name, residence address, and the names and addresses of any places at

Plea Agreement-13

which the Defendant is or will be an employee or a student. The Defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The Defendant understands that failure to comply with these obligations subjects the Defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

16. <u>Integration Clause:</u>

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

JOSEPH H. HARRINGTON
United States Attorney

_____          5/16/18
Scott T. Jones                                        Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other

Plea Agreement-14

than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____        16 May 2018
CARLOS QUINTO FRAGOSO                  Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____        16 May 2018
Greg Scott                             Date
Counsel for the Defendant

Plea Agreement-15